IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ROA GENERAL, INC. dba REAGAN OUTDOOR ADVERTISING,<br><br>    Plaintiff,<br><br>  vs.<br><br>SALT LAKE CITY CORPORATION, a Utah municipality,<br><br>    Defendant. | ORDER AND<br><br>MEMORANDUM DECISION<br><br><br>Case No. 2:10-CV-00020 TC |

    In 2008, Plaintiff ROA General, Inc. dba Reagan Outdoor Advertising (Reagan) applied to Defendant Salt Lake City Corporation (the City) to adjust the height of one of Reagan's outdoor advertising signs (the Reagan sign).  The City denied Reagan's application, and this denial was upheld by the Board of Adjustment at a meeting in November, 2009.  Reagan now seeks review of the Board's decision, and both parties have filed Cross-Motions for Partial Summary Judgment.

    Because it was not arbitrary, capricious, or illegal for the Board of Adjustment to decide that the City reasonably denied Reagan's application, Reagan's Motion for Partial Summary Judgment (Dkt. No. 10)  is DENIED and the City's Motion for Partial Summary Judgment (Dkt. No. 22) is GRANTED.

**BACKGROUND**

The Reagan sign is located at 243 West, 600 South in Salt Lake City on land adjacent to a Marriott Hotel. Marriott acquired its property from the Utah Department of Transportation (UDOT) and then erected its own sign (the Marriott sign) and parking lights. Reagan claims that the Marriott sign and the parking lights obstruct the view of Reagan's sign. Reagan seeks to raise the Reagan sign to a height that would allow an unobstructed view of the sign. Reagan relies on the following provision of the Utah Code: "[T]he owner of [an outdoor advertising] sign may adjust the height of the sign" if its "view and readability . . . is obstructed" by an "improvement created on real property" that was formerly owned by the state. Utah Code Ann. § 72-7-510.5.

In 2008, Reagan submitted a request to Salt Lake City Building Services for permission to raise the Reagan sign to a proposed height of eighty-three feet. On December 3, 2008, Building Services issued an Administrative Decision in the form of a letter from the Development Review Supervisor, Larry Butcher, that denied Reagan's request. Mr. Butcher wrote:

> Based upon your plan submittal to Building Services and Licensing, I am unable to approve your request because the proposed height of the sign appears to be greater than the height necessary to provide a clearly visible sign to the eastbound traffic on 600 South. Based upon a site visit and the information you have provided, the sign would be clearly legible at a height just above the existing hotel pole sign to the west.

(R. at 152.) In the letter Mr. Butcher asked Reagan to adjust the proposed height of the sign or to "provide additional information and documentation in support of [the] present height request." Id. Reagan declined this invitation and instead, appealed the decision to the Board of Adjustment.

The Board of Adjustment postponed its decision on the matter until its November 16, 2009 meeting, because the City was involved with ongoing negotiations with Marriott concerning the removal of the Marriott sign.  Two days before the Board meeting, Marriott did remove the sign at the City's expense. But the parking lights remained.

The Board upheld the administrative decision for the following reasons:

1. Not enough information was submitted by the Applicant to determine the minimum increase in height that may be necessary so that the billboard would be clearly visible from the main travel way.
2. Building Services requested that additional information be submitted by the Applicant to determine the minimum increase in the height necessary so the billboard would be clearly visible from the main travel way.
3. Prior to approving an increase in height, the on premise sign that created the need to raise the billboard has been moved making the issue mute [sic].
4. The parking lot lights and the landscaping do not pose a <u>significant</u> obstruction to the view and readability of the billboard.

(R. at 9 (emphasis added).)

Reagan argues that Board of Adjustment's decision was arbitrary and capricious because the Board inappropriately applied a "significance" test for obstruction, which is not part of the wording of the Utah Statute.  Reagan further argues that it was incorrect for the Board of Adjustment to find that Reagan needed to prove a minimally acceptable height increase when raising its sign.  The City counters that the Board of Adjustment could have reasonably concluded that the parking lights did not constitute an obstruction as contemplated by the statute, and that the plaintiffs offered no evidence to show that they had an unrestricted right to raise the sign to whatever height they deemed necessary.  The City further contends that the issue is at any rate moot due to the removal of the Marriott sign.

3

ANALYSIS

**Standard of Review**

When reviewing a decision of the Board of Adjustment, the correct standard for review is set forth in Utah Code Ann. § 10-9a-801, which directs that Utah courts reviewing a municipal land use decision shall "(i) presume that a decision, ordinance or regulation made under the authority of this chapter is valid; and (ii) determine only whether or not the decision, ordinance, or regulation, is arbitrary, capricious, or illegal." The Code explains that a "final decision of a land use authority or an appeal authority is valid if the decision is supported by substantial evidence in the record and is not arbitrary, capricious, or illegal." Utah Code Ann. § 10-9a-801(c). In determining whether substantial evidence supports the Board's decision, a reviewing court must "determine whether a reasonable mind could reach the same conclusion as the Board." M & S Cox Invs., LLC v. Provo City Corp., 169 P.3d 789, 797 (Utah Ct. App. 2007).

**Mootness**

The City argues that the issue before the Board of Adjustment was moot because the City had paid to have the Marriott sign removed to a location where it would not obstruct Reagan's billboard. But Reagan contends that its initial request to raise the billboard encompassed all of the alleged obstructions: the Marriott sign, the parking lights, and the trees. According to Reagan, the initial request and subsequent appeals focused on the Marriott sign merely because it was the highest of the obstructions alleged, which included the parking lights. Because those lights remained even after the City had moved the Marriott sign, the court finds that the question of whether Reagan has a right to adjust the height of its billboard under Utah Code Ann. § 72-7-510.5 is not moot. As a result, the denial by Building Services of Reagan's request to move its

billboard to a height of eighty-three feet was properly before the board.

**The Board of Adjustment's Decision**

While the court finds that Reagan's appeal was not moot, the court must also determine the proper scope of that appeal. The Board of Adjustment was hearing an appeal of a Building Services determination, the content of which is described in Mr. Butcher's letter of December 3, 2008. (R. at 152.) Importantly, the letter does not deny Reagan the ability to adjust the height of its billboard. Rather, it merely states that "the proposed height of the sign appears to be greater than the height necessary to provide a clearly visible sign to the eastbound traffic on 600 South." (Id.) The Building Services decision that was before the Board of Adjustment was not whether the light poles or hotel sign constituted obstructions as contemplated in Utah Code Ann. § 72-7-510.5, but whether Reagan's proposed height of eighty-three feet was acceptable. Building Services determined that it was not. As a result, the question that is properly before this court is whether a reasonable mind could find that Building Services did not err when it demanded that Reagan either reduce the proposed height of its sign or provide additional documentation in support of its initial request.

The court finds that a reasonable mind could uphold the Building Services decision. The Board of Adjustment found that "not enough information was submitted by the Applicant to determine the minimum increase in height that may be necessary so that the billboard would be clearly visible from the main travel way." (R. at 9.) The court agrees with the Board of Adjustment. Nowhere in the record does Reagan provide evidence that eighty-three feet was at any time the minimum height required to provide a clearly visible sign. Instead, Reagan appears to be seeking a declaration that it has the right to raise its sign to whatever height it deems

necessary to make the sign clearly visible. But this interpretation is not required by the language of the statute. Utah Code Ann. § 72-7-510.5 merely provides that a height adjusted sign may be erected "to a height to make the entire advertising content of the sign clearly visible." Building Services reasonably interpreted this statute when it determined that it would allow a height adjustment only to the minimum necessary for a clearly visible sign. The Board of Adjustment agreed with that interpretation, finding that "no compelling argument [was] offered to allow an open-ended height" as it related to the alleged obstructions. (R. at 9.) The Board's decision was not arbitrary, capricious, or illegal.

Reagan is concerned that the Board of Adjustment's decision encompasses not only the agreement with Building Services that Reagan's application should have been denied due to the height problem, but also that the Board of Adjustment agreed with the City that the "parking lot lights and the landscaping do not pose a significant obstruction to the view and readability of the billboard." (R. at 9.) The court shares that concern. The only issue before the Board was whether Building Services had erred when requiring Reagan to submit additional information or a different proposed height. Building Services never ruled on whether parking lot lights could constitute an obstruction as contemplated by the statute. Nor was either party able to sufficiently present this issue in front of the Board of Adjustment. With the exception of a few photographs, Reagan's materials before the Board were focused on the situation in which the Marriott sign was still present. And, as the City argued, it could face serious precedential issues if the Board were to hold that any obstruction necessarily affected the view and readability of a sign and therefore gave rise to the adjustment procedures contemplated in § 72-7-510.5. Additionally, Utah Code Ann. § 10-9a-707 states that "[o]nly those decisions in which a land use authority has applied a

land use ordinance to a particular application, person, or parcel may be appealed to an appeal authority." Building Services never made a decision on the parking lights; as a result, the Board of Adjustment lacked the jurisdiction to include a ruling on this issue in their decision.

This court upholds the Board of Adjustment's decision because it finds that the decision is adequately supported by the first two grounds of the Board's holding—namely, that not enough information was submitted by Reagan concerning the minimum height necessary and that Building Services requested this information in their letter rejecting Reagan's application. The court does not support the Board's third ground, which states that the issue is moot, because the parking lights may create a continuing obstruction. The court similarly rejects the Board's fourth ground, as the issue of whether the parking lights were an obstruction was not properly before the Board.

## ORDER

For the foregoing reasons, Reagan's Motion for Partial Summary Judgment is DENIED and the City's Motion for Partial Summary Judgment is GRANTED.

DATED this 3rd day of February, 2012.

BY THE COURT:

_____
TENA CAMPBELL
United States District Judge